```
               IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                         DIVISION OF ST. CROIX
```

```
CATHY M. SMITH                     :         CIVIL ACTION
                                   :
          v.                       :
                                   :
VIRGIN ISLANDS WATER AND           :
POWER AUTHORITY, et al.            :         NO. 04-148
```

<u>MEMORANDUM</u>

Bartle, C.J.                                    November 24, 2008

Now before the court are three motions of the defendants for summary judgment.

Plaintiff Cathy Smith brings this employment discrimination lawsuit against:  (1) Virgin Islands Water and Power Authority ("WAPA"), her former employer; (2) Alberto Bruno-Vega ("Bruno-Vega"), WAPA's Executive Director at the time of her resignation; and (3) the then-members of WAPA's Governing Board, including Carol Burke, Daryl Lynch, Roy Anduze, Andrew Rutnick, Ira Hobson, William Lomax, and Alphonso Franklin (the "Governing Board defendants").  Smith alleges that defendants violated federal anti-discrimination laws, including Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967.  She asserts that defendants demoted her and thereafter failed to promote her because of her age and her national origin as an African-American born and reared on the United States mainland.  She also alleges that defendants:  (1) breached her employment contract; (2) breached the duty of good

faith and fair dealing under § 205 of the Restatement of
Contracts (Second); (3) wrongfully and constructively discharged
her; (4) intentionally and negligently inflicted emotional
distress upon her; and (5) made false and defamatory statements
about her, all in violation of Virgin Islands law.

I.

Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986). A dispute is genuine if the evidence is
such that a reasonable jury could return a verdict for the non-
moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254
(1986). The court may consider only evidence that would be
admissible at trial. Philbin v. Trans Union Corp., 101 F.3d 957,
961 n.1 (3d Cir. 1996). After reviewing the evidence, the court
makes all reasonable inferences from the evidence in the light
most favorable to the non-movant. In re Flat Glass Antitrust
Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II.

For the purpose of reviewing defendants' motions for
summary judgment, the following facts are either undisputed or
viewed in the light most favorable to plaintiff, the non-movant.

Plaintiff is an African-American woman born in the
United States in August, 1957. In October, 1990, she was hired

-2-

as a Deputy Counsel in the legal department of WAPA, a Virgin
Islands public corporation and "autonomous governmental
instrumentality."  WAPA is managed by a Governing Board of nine
individuals appointed by the Governor of the Virgin Islands.  The
Governing Board has discretion to adopt corporate by-laws which
outline the powers and responsibilities of various individuals
within the corporation.  WAPA's day-to-day operation is managed
by an Executive Director.  Individuals holding certain other
high-level positions within WAPA are classified as "officers."
One of WAPA's by-laws states:

> An Officer may be removed by the Executive
> Director (CEO) after having been given notice
> in writing of his or her removal and reasons
> therefore unless prohibited by law.  Any
> Officer so removed shall have the right to
> appeal to the Governing Board within ten (10)
> days of such removal for a hearing, and upon
> appeal shall be granted such hearing,
> whereupon the Governing Board shall either
> approve the removal of such officer or order
> his reinstatement by the Executive Director
> (CEO).

In 1998, plaintiff resigned from her position as Deputy
Counsel with WAPA to accept employment at a private law firm.  In
September, 1999, WAPA offered plaintiff the position of General
Counsel, which she accepted.  Plaintiff never signed a written
employment contract with WAPA for the position of General
Counsel, which had historically been described in the company's
by-laws as an "officer" position.[1]

---

1.  At some point during plaintiff's tenure as General Counsel,
the Governing Board amended the by-laws to designate the General
                                        (continued...)

-3-

In May, 2002, the then-Executive Director of WAPA, Joseph Thomas, resigned from his position.  Upon Thomas's departure, Glen Rothgeb was chosen to serve as Acting Executive Director.  In December, 2002, the Executive Director position was filled on a permanent basis by defendant Alberto Bruno-Vega, who had previously served as Executive Director of WAPA between 1989 and 1995.

Plaintiff asserts that from the day of his return as Executive Director, Bruno-Vega refused to cooperate with her in the performance of her job duties.  She contends that he regularly assigned work directly to her subordinates rather than assigning work to her.  She also asserts that he refused to discuss with her the company's legal matters.

On August 21, 2003, Bruno-Vega informed the Governing Board that he planned to demote plaintiff from General Counsel to Deputy Counsel.  The Governing Board at that time included defendants Carol Burke, Daryl Lynch, Roy Anduze, Andrew Rutnick, Ira Hobson, William Lomax, and Alphonso Franklin.  Later that day, Bruno-Vega notified plaintiff by letter of his decision and advised her that "[b]ased upon recent revelation and circumstances, I have lost confidence in your ability to perform the duties and obligations in your present position."

---

1.(...continued)
Counsel position as a non-officer role.  In June, 2003, however, the Board reclassified General Counsel as a corporate officer.

-4-

The board immediately promoted Sharmane Davis-Brathwaite, one of the company's two Deputy Counsel, to serve on an interim basis as Acting General Counsel.  Davis-Brathwaite is an African-American woman born in 1973.  The Board simultaneously accepted Bruno-Vega's recommendation to hire Lorelei Farrington, an African-American woman born in August, 1958 and a former Deputy Counsel of WAPA, as General Counsel on a permanent basis after a brief transitional period.  Plaintiff contends that both Davis-Brathwaite and Farrington are native Virgin Islanders of West Indian ancestry.  Defendants have not conceded that plaintiff is correct in this regard.

A press release issued on August 21, 2003 by WAPA read in pertinent part as follows:

> Also in Executive Session, the Authority accepted the Executive Director's recommendation to hire Attorney Lorelei M. Farrington to join WAPA as its General Counsel and Nellon L. Bowry as its Chief Financial Officer.  Maurice Sebastien will serve as Acting Chief Financial Officer and Attorney Sharmane Davis-Brathwaite will serve as Acting General Counsel until the positions are permanently filled.

A newspaper, the St. Thomas Source, ran an article on August 22 detailing these events and noting plaintiff's new position as Deputy Counsel.  On September 10, 2003, Standard & Poor's also issued a short statement detailing WAPA's personnel changes.

Shortly after her reassignment, plaintiff filed notices of appeal with both the Public Employees Relations Board ("PERB") and WAPA's Governing Board.  The PERB dismissed plaintiff's

-5-

appeal on September 24, 2003 "to permit WAPA's Governing Board to make a final decision/determination on [plaintiff's] Appeal." The Governing Board, headed by chairperson Carol Burke, conducted a hearing on Smith's appeal on September 30, 2003.  The Board took into consideration a letter written by Bruno-Vega on September 17, 2003 in which he attributed his loss of confidence in plaintiff to three specific instances in which her job performance failed to meet his expectations.

On October 21, 2003, the Governing Board rendered written findings and conclusions upholding Bruno-Vega's decision to remove plaintiff from the position of General Counsel. Plaintiff filed a second appeal with the PERB on the same day. On December 2, 2003, the PERB dismissed plaintiff's second appeal on jurisdictional grounds.  Following the PERB's dismissal of plaintiff's appeal, WAPA formalized plaintiff's reassignment to the position of Deputy Counsel by issuing a notice of personnel action.  Plaintiff nonetheless continued to receive the same salary and benefits she had received while serving as General Counsel in August, 2003.

In February, 2004, approximately six months after plaintiff was reassigned, Lorelei Farrington assumed the role of General Counsel for WAPA.  Beginning March 8, 2004, WAPA sought to hire someone for the newly created position of Assistant General Counsel.  Plaintiff applied for the position on March 19, 2004 and was interviewed by a WAPA hiring committee on April 20, 2004.  On July 7, 2004, WAPA Personnel Manager Denise Nibbs

-6-

notified Smith that "[h]aving given careful consideration to the qualifications of all in-house applicants interviewed for Assistant General Counsel on April 20, 2004, the interviewing panel has made a decision to give consideration to applicants from outside the Authority."

Plaintiff asserts that from the date of her demotion from General Counsel to Deputy Counsel, Bruno-Vega intensified his efforts to force plaintiff to resign from WAPA. She contends that among other things, he arranged for a drastic reduction in the quality and amount of legal work assigned to her. On September 2, 2004, Smith signed a letter notifying Bruno-Vega of her intent to resign from WAPA effective September 16, 2004. On September 3, 2004, Bruno-Vega, by letter, accepted Smith's resignation. In October, 2004, Smith obtained employment with a private law firm at an annual salary of $160,000. She remained there until resigning in June, 2006.

Effective November 17, 2004, WAPA hired Wayne Anderson to fill the position of Assistant General Counsel. Anderson is African-American and was born in March, 1959. Plaintiff alleges that Anderson is a native Virgin Islander of West Indian ancestry. Defendants challenge plaintiff's proof on this point.

III.

We will first address plaintiff's claims brought under federal law. In Count VII of her complaint, plaintiff asserts that defendants violated Title VII of the Civil Rights Act of 1964 by demoting her and by failing to promote her on the basis

-7-

of national origin and age.  She claims she was replaced by
younger African-American Virgin Islanders of West Indian
ancestry.  Although plaintiff is African-American as well, she
was born in the mainland United States.

Title VII makes it unlawful for an employer "to fail or
refuse to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or
national origin."  42 U.S.C. § 2000e-2(a)(1).

In order to prevail on a claim of discrimination based
on national origin under Title VII, a plaintiff must present
either direct evidence of discrimination, see Price Waterhouse v.
Hopkins, 490 U.S. 228 (1989), or indirect evidence of
discrimination that satisfies the three-step framework of
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Here,
plaintiff has presented no direct evidence of discrimination.
She therefore bears the burden of establishing a prima facie case
under McDonnell Douglas.  To do so, she must come forward with
evidence that:  (1) she was a member of a protected class; (2)
she was qualified for the position; (3) she suffered an adverse
employment action; and (4) similarly situated employees who are
not members of the protected class were treated more favorably.
See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19
(3d Cir. 2000).  "Once a plaintiff under Title VII establishes a
prima facie case, the employer must come forward with a

-8-

legitimate, non-discriminatory reason for the adverse employment decision.  If the employer is able to proffer a legitimate, nondiscriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination." Id. at 319.

Plaintiff has testified that she is an African-American woman born in the mainland United States in August, 1957.  She has also submitted evidence that she was qualified for the positions of General Counsel and Assistant General Counsel of WAPA, and that she suffered an adverse employment action, namely, that she was demoted from the position of General Counsel and thereafter not promoted to the position of Assistant General Counsel.

To satisfy the final element of her prima facie case, that similarly situated employees who are not members of her protected class were treated more favorably, plaintiff has attempted to present evidence that her replacements, Sharmane Davis-Brathwaite and Lorelei Farrington, as well as the new Assistant General Counsel Wayne Anderson, were African-American Virgin Islanders of West Indian origin.

According to the United States Supreme Court, "the term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88 (1973).  Our Court of Appeals has treated Virgin Islanders as a protected class on that basis. Chiang v. Veneman, 385 F.3d

-9-

256, 269 (3d Cir. 2004).  Nonetheless, the distinction that plaintiff seeks to draw between African-Americans born in the continental United States and African-Americans of West Indian ancestry born in the Virgin Islands seems to be a novel one.  In any event, we need not reach the viability of that distinction for the reasons stated below.

Plaintiff's evidence of the national origin of the three individuals in question consists solely of her own testimony.  When asked at her deposition about the national origin of Sharmane Davis-Brathwaite, the woman selected to serve as Acting General Counsel after plaintiff's demotion, plaintiff answered, "I really don't know, but I believe she's – and I take that back.  I do know.  I think she said not – again, not when she was hired, but I think she's a native Virgin Islander, black West Indian."  She later stated that Davis-Brathwaite is "a United States citizen, but she was not born in the continental United States.  She's of Caribbean West Indian descent."  As to Lorelei Farrington, plaintiff's ultimate replacement as General Counsel, plaintiff stated at her deposition that the Board "voted to hire someone [Farrington] who was younger than me and also of Caribbean descent."  With respect to Wayne Anderson, the individual who was hired as Assistant General Counsel, plaintiff states only that "he had the one qualification I did not possess: he was of West Indian heritage."  This is the extent of the evidence about the national origin of these three individuals.

Discovery in this case was ongoing for almost eighteen months.  Defendants have contested plaintiff's allegations regarding the national origin of those persons purportedly treated more favorably than she.  Plaintiff was well aware of her burden to discover and present to the court the necessary evidentiary foundation in support of her allegations.  Her counsel questioned Bruno-Vega as to the national origin of the individuals in question, and he testified that he did not know.  Governing Board member Roy Anduze testified similarly, stating, "I don't know where she [Davis-Brathwaite] was born.  For all I know she was born in Tortola, St. Thomas, St. Croix, New York, I don't know.  I have no idea."  Plaintiff herself stated on the record that "I'm sure in some cases you might assume some people were born in the Virgin Islands, and you might find out they weren't, so you couldn't always make that assumption."

Defendants object to plaintiff's statements as both inadmissible and insufficient to establish the national origin of Davis-Brathwaite, Farrington, and Anderson.  In ruling on defendants' motions for summary judgment, we may consider only evidence that would be admissible at trial.  Philbin, 101 F.3d at 961.  On the record before us, plaintiff's statements as to national origin of the three individuals in question are hearsay.  Plaintiff cannot know this information of her own knowledge and must be relying on what others told her or on the reputation concerning the three in the community.

While hearsay is generally excludable, an exception allows for the admissibility of evidence of "[r]eputation ... among a person's associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history," even where the declarant is available as a witness.  See Fed. R. Evid. 803(19). The late Judge Becker, writing for our Court of Appeals, addressed the applicability of that rule on an appeal from a grant of summary judgment in Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 100 (3d Cir. 1999).  The plaintiff in that case, Blackburn, sued his employer for retaliation under the Conscientious Employee Protection Act.  He had reported perceived problems with a new customer discount program to his supervisors and soon thereafter was terminated, ostensibly on the basis of the company's anti-nepotism policy, which Blackburn had in fact violated.  To demonstrate that his employer's stated reason for the discharge was a pretext, Blackburn presented evidence that the policy was rarely enforced.  He offered his own testimony as to regular discussions within the workplace community that certain employees had relatives within the company.  Blackburn conceded, however, that he was unable to recall who specifically had told him much of the information.

Judge Becker described the foundation required to admit such evidence under Rule 803(19) as follows:

> [T]he reputation testimony [must] arise[]
> from sufficient inquiry and discussion among
> persons with personal knowledge of the matter
> to constitute a trustworthy "reputation."
> Rumors and speculation are clearly
> insufficient in this regard.  Testimony by a
> declarant that he heard, from some unknown
> source, that two people were related in some
> way would be inadmissible under Rule 803(19).
> Rather, what is required is the laying of a
> foundation of knowledge grounded in inquiry,
> discussion, interactions, or familiarity
> "among a person's associates, or in the
> community" in which he works.

Id. at 100.  Applying this standard, the Court of Appeals

concluded that the majority of Blackburn's evidence lacked the

requisite foundation and was therefore inadmissible.  Id. at 101-

02.

          Similarly, plaintiff in the case at hand has offered no

foundation for her statements regarding the national origin of

Davis-Brathwaite, Farrington, or Anderson.  We have no way of

knowing the source of her information.  We do not know, for

example, whether she learned what was contained in her deposition

from the persons in question or from familiarity and inquiry in

the workplace community, or whether all the information was

merely the result of rumor or speculation.  Without more,

plaintiff's statements are not trustworthy.  They do not meet the

requirements of Rule 803(19) of the Federal Rules of Evidence and

are thus inadmissible hearsay.

          Without this evidence, plaintiff has presented nothing

to support her allegation that the individuals who received the

desired positions at WAPA belonged to a protected class other

-13-

than her own.  Accordingly, she has failed to establish a prima facie case of discrimination on the basis of national origin.  We will grant summary judgment in favor of defendants and against plaintiff on Count VII insofar as it alleges a Title VII claim for discrimination on the basis of national origin.[2]

We now address whether defendants are entitled to summary judgment on plaintiff's Title VII claim of age discrimination.  We will consider that issue in conjunction with plaintiff's claim of age discrimination under the ADEA, contained in Count VIII, which makes it illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 622.

Claims of age discrimination under both statutes are analyzed using the same three-step process discussed above, although our Court of Appeals has described the process as being "slightly modified" in ADEA cases.  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).  The differences are immaterial under the present circumstances.  If plaintiff is able to establish a prima facie case, defendants must then offer a legitimate, nondiscriminatory reason for the

---

2.  Furthermore, plaintiff has presented no evidence that any defendant knew the national origin of Davis-Brathwaite, Farrington, or Anderson.  Without such evidence, plaintiff cannot establish pretext under McDonnell Douglas.  See, e.g., Blackburn, 179 F.3d at 102-03.

-14-

adverse employment action.  If defendants satisfy this burden, the plaintiff may then survive summary judgment by submitting evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. at 1108.

Plaintiff here offers evidence that she was approximately 46 years old at the time of her removal from the position of General Counsel.  Sharmane Davis-Brathwaite, who assumed the temporary position of Acting General Counsel after plaintiff's reassignment, is approximately 16 years younger than plaintiff.  Lorelei Farrington, who ultimately succeeded plaintiff as General Counsel and who was born in August, 1958, is only a year younger than plaintiff.  Wayne Anderson, the individual hired by WAPA to fill the newly created position of Assistant General Counsel, was born in March, 1959.  Thus, he is approximately 18 months younger than plaintiff.

Our Court of Appeals has held that where a plaintiff and her replacement differed in age by only two to three years, the plaintiff cannot establish a prima facie case of age discrimination.  Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 307 (3d Cir. 2004).  Consequently, defendants' decision to hire Farrington and Anderson, who are respectively one year and one-and-a-half years younger than plaintiff, cannot subject defendants to liability to plaintiff for age discrimination.

-15-

We assume for present purposes, however, that plaintiff has presented a prima facie case on the basis of her temporary replacement by the significantly younger Davis-Brathwaite. Moving to the second McDonnell Douglas step, we conclude that defendants have articulated a legitimate non-discriminatory reason for demoting plaintiff.  They offer considerable evidence that Bruno-Vega, the Executive Director, was displeased with plaintiff's conduct in a variety of legal matters and had lost confidence in her abilities as a result.  Bruno-Vega categorically denies that his decisions were in any way based upon age.

Moreover, there is no evidence upon which a jury could find that defendants' legitimate non-discriminatory reasons for demoting plaintiff were a pretext for discriminating against her on the basis of age.  Davis-Brathwaite was promoted to Acting General Counsel for less than six months.  It was announced at the time of Davis-Brathwaite's temporary promotion that the position would ultimately be filled by Farrington, who was only one year younger than plaintiff.  It strains credulity to suggest that plaintiff was demoted on the basis of her age.

Accordingly, we will grant summary judgment in favor of defendants and against plaintiff on her claims of age discrimination under Title VII and the ADEA.

IV.

We will now address plaintiff's claims brought under Virgin Islands law.  In Count I of her complaint, plaintiff sues

-16-

all defendants for breach of contract.  Defendants argue that
they are entitled to summary judgment on that claim because
plaintiff was an at-will employee of WAPA who could be terminated
or reassigned without cause at any time.  Plaintiff concedes that
there was no written employment contract governing her
relationship with WAPA.  She instead asserts that her
reassignment from General Counsel to Deputy Counsel violated an
implied contract embodied by WAPA's Personnel Policies and
Procedures Manual (the "Manual").

It is well established that "internal personnel rules
can be construed as an implied contract, if there is evidence
that the employer intended to be bound by the requirements set
forth in those rules." Smith v. V.I. Port Auth., Civ. A. No. 02-
227, 2005 WL 15459, at *4 (D.V.I. Jan. 2, 2005).  Nonetheless,
Virgin Islands courts have held that where an employer "reserved
to itself the absolute discretion of modification of ... Rules
without any input whatsoever from the employee," the employer's
personnel policies were not intended to constitute an employment
contract.  James v. W. Indian Burgers, Inc., 24 V.I. 67, 71 (V.I.
Terr. Ct. 1988).

Plaintiff directs us to the following statement in
WAPA's Manual to demonstrate that her demotion constituted a
breach of contract:  "[a]ny change of an employee to a position
of a lower rank shall be made only for just cause unless such
employee requests a voluntary demotion."  Defendants counter that
WAPA never intended for the Manual to embody a contract between

-17-

the company and its employees.  They point to the following
"Statement of Purpose" contained in the Manual throughout
plaintiff's employment:

> The Authority reserves the right unilaterally
> in its discretion to amend, supplement,
> modify, suspend, eliminate or terminate any
> or all such procedures or policies in whole
> or in part, at any time, with or without
> notice....
>
> Procedures and practices in the field of
> personnel relations are subject to
> modification and further development in light
> of experience....
>
> From time to time you will receive
> supplements to our Personnel Policy Manual.
> These supplements will update and revise
> present policies and practices whenever
> deemed necessary.

On the record before us, plaintiff has provided no
evidence that there existed a contract prohibiting her
reassignment without cause.  The evidence is unequivocal that
WAPA did not intend for the Manual to constitute a contract
between the company and its employees.  Consequently, we will
grant summary judgment in favor of defendants and against
plaintiff on Count I of the complaint insofar as plaintiff
alleges a breach of contract.[3]

Plaintiff also alleges in Count I a breach of the
implied covenant of good faith and fair dealing under § 205 of
the Restatement of Contracts (Second), which states that "[e]very

---

3.  WAPA argues in the alternative that it had good cause to
reassign plaintiff.  Because the evidence is unequivocal that
plaintiff's reassignment was permissible even without cause, we
will not address the question whether such cause existed.

contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  Plaintiff makes identical allegations of "bad faith and unfair dealing" by defendants in Count II of her complaint.  We will address the claims together.

The implied covenant of good faith and fair dealing applies to at-will employment contracts in the Virgin Islands. See Bostic v. AT&T of V.I., Civ. A. No. 01-226, 2003 WL 25322909, at *7 (D.V.I. Apr. 16, 2003); Petersen v. First Fed. Sav. & Loan Ass'n, 617 F. Supp. 1039, 1042 (D.V.I. 1985).  Nonetheless, courts have recognized that a tension exists between the two doctrines insofar as the implied covenant imposes a duty of good faith and fair dealing on an employer who intended to retain total discretion over his or her employment relationships.  See Toner v. Allstate Ins. Co., 829 F. Supp. 695, 698 (D. Del. 1993). In order for plaintiff to succeed on her claim, she must prove acts by the defendant "that amount to fraud, deceit, or misrepresentation."  Marcano v. Cowpet Beach Resort, Civ. No. 570/1990, 1995 WL 217600, at *4 (V.I. Terr. Ct. Mar. 9, 1995).

Plaintiff contends that defendants engaged in fraud when they demoted her without cause and failed to promote her, both for discriminatory reasons.  The record shows only that plaintiff, an at-will employee, was demoted when her superiors lost confidence in her ability to perform her job duties. Plaintiff has failed to produce evidence of any misrepresentation or false statement on the part of any defendant.  Accordingly,

because plaintiff has presented no evidence of fraud, deceit, or misrepresentation, we will grant summary judgment in favor of defendants on Counts I and II of the complaint.

In Count III of her complaint, plaintiff alleges that she was wrongfully discharged.  Although such claims are typically brought under the Virgin Islands Wrongful Discharge Act ("WDA"), <u>see</u> 24 V.I.C. § 76, plaintiff concedes that the WDA does not apply here because WAPA is a "public employer," <u>see</u> 24 V.I.C. § 62.  Instead, plaintiff argues that where an aggrieved party is barred for technical reasons from bringing a claim under the WDA, she may substitute a common law claim based on public policy against wrongful termination.

This court has recently held that where a plaintiff is unable to state a claim for wrongful discharge under the WDA, no common law action based on public policy exists.  <u>See</u> <u>Urgent v. Hovensa, LLC</u>, Civ. A. No. 06-105, 2008 WL 4526677, at *8 (D.V.I. Oct. 2, 2008).  That holding is directly applicable on the record before us.  Plaintiff may not seek recourse from the common law simply because she is unable to sue WAPA under the WDA. Accordingly, no genuine issue of material fact exists as to whether plaintiff may obtain relief on Count III of her complaint.  We will grant summary judgment in favor of defendants and against plaintiff on that claim.

Count IV of the complaint alleges constructive discharge in violation of Virgin Islands common law.  As set forth above, defendants argue that the only cause of action for

-20-

constructive discharge under Virgin Islands law is found in the WDA, under which plaintiff is unable to state a claim. Defendants further contend that plaintiff cannot circumvent that legislative scheme by bringing a claim for constructive discharge based on public policy.

A split in authority exists as to whether the WDA gives rise to a cause of action for constructive discharge. See Bostic, 2003 WL 25322909, at *7 (citing Williams v. Kmart Corp., Civ. A. No. 99-102, 2001 WL 304024 (D.V.I. March 13, 2001); Harley v. Caneel Bay, Inc., 193 F. Supp. 2d 833 (D.V.I. 2002)). In any event, plaintiff is barred from suing defendants under the WDA because she was a public employee. We therefore need to address only whether a cause of action for constructive discharge exists under Virgin Islands common law.

To the extent that plaintiff requests us to recognize her cause of action on public policy grounds, we decline to do so. Plaintiff directs us to no case in which a territorial or federal court sitting in the Virgin Islands has permitted a claim of constructive discharge based solely on public policy grounds. We conclude that plaintiff has not raised a genuine issue of material fact as to whether she can obtain relief on her claim of constructive discharge. Defendants are entitled to summary judgment on Count IV of the complaint.

In Count V of her complaint, plaintiff brings a claim of intentional infliction of emotional distress. This court has adopted the standard provided in § 46(1) of the Restatement

(Second) of Torts, which states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability ...." See Claytor v. Chenay Bay Beach Resort, 79 F. Supp. 2d 577, 583 (D.V.I. 1999).  Recovery is limited to situations where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Restatement (Second) of Torts, § 46, cmt. d (quoted in Claytor, 79 F. Supp. 2d at 583); see also Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir. 1988)).  It is well established that "as a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery."  Cox, 861 F.2d at 395.

Our Court of Appeals has recognized that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."  Id. (quoted in Ramos v. St. Croix Alumina, L.L.C., 277 F. Supp. 2d 600, 604 (D.V.I. 2003)).  In this case, plaintiff offers evidence that defendants made her workplace environment unsatisfying and unpleasant.  That evidence, however, does not rise to the level of outrageousness required to support a jury verdict in plaintiff's favor on this count.  We will grant summary judgment in favor of defendants on Count V of plaintiff's complaint.

Plaintiff also sues for negligent infliction of emotional distress against defendants.  To succeed on such a claim, plaintiff must show that she suffered physical injury as a result of defendants' negligent conduct and that defendants should have realized its conduct carried an unreasonable risk of causing such injury.  See Restatement (Second) of Torts § 313; Anderson v. Gov't of the V.I., 180 F.R.D. 284, 287 (D.V.I. 1998). Intentional conduct, however, such as demoting or terminating an employee, cannot serve as the basis for a claim of negligent infliction of emotional distress.  See, e.g., Walsh v. Krantz, Civ. A. No. 07-616, 2008 WL 3981492, at *8 (M.D. Pa. Aug. 22, 2008); Burton v. Pa. Bd. of Prob. & Parole, Civ. A. No. 02-2573, 2002 WL 1332808, at *7 (E.D. Pa. June 13, 2002); DiSalvio v. Lower Merion High Sch. Dist., 158 F. Supp. 2d 553, 561 (E.D. Pa. 2001).  Here, plaintiff presents evidence of only intentional conduct on the part of defendants.  Accordingly, we conclude that defendants are entitled to summary judgment on Count VI.

In Count IX of her complaint, plaintiff alleges that defendants engaged in defamation when they "falsely accused her of misconduct in her profession."  To recover on a claim of defamation under Virgin Islands law, "the plaintiff must prove that: (1) defendants made a false and defamatory statement concerning another; (2) said communication was an unprivileged publication to a third party; (3) the defendants were at fault amounting to at least an act of negligence; and (4) the publication caused harm to the plaintiff."  Flanders v. Shell

-23-

Seekers, Inc., 1998 WL 667782, at *3 (V.I. Terr. 1998) (citing Restatement (Second) of Torts § 558).  "Truth is an absolute defense to a defamation claim and the defendant bears the burden on that issue."  Id. at *4.

We conclude that plaintiff has presented no evidence of false statements necessary for her claim of defamation. Defendants published a press release on August 21, 2003 stating that a new General Counsel had been appointed.  Other media outlets carried a similar story which noted that plaintiff had been reassigned to Deputy Counsel.  The publications did not state or even imply that plaintiff's job performance was a reason for the personnel actions.  All of the published information was indisputably true.  Accordingly, we will grant summary judgment in favor of defendants on Count IX of the complaint.

Plaintiff's final claim is for punitive damages.  We have already determined that summary judgment in favor of defendants is appropriate on Counts I through IX of the complaint.  Consequently, plaintiff is entitled to no relief, whether it be in the form of punitive damages or otherwise. Summary judgment will be entered in favor of defendants on Count X of the complaint.